UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | )<br>) |
| Plaintiff | )<br>) |
| vs. | ) Case No.6:14-CV-03119-SWH<br>) |
| ROBERT J. SANDS AND SPRACKLEN<br>INSURANCE SERVICES, INC. | )<br>)<br>) |
| Defendants | )<br>) |

# SUGGESTIONS IN SUPPORT OF SPRACKLEN INSURANCE SERVICES, INC.'S MOTION TO DISMISS

TABLE OF CONTENTS

I. Standard of Review..................................................................................................4

II. No Tortious Interference With Contract.................................................................5

III. Plaintiff Has Failed to Sufficiently Designate What Its Trade Secret Is......................11

IV. No Tortious Interference With Business Expectancy..................................................14

       a. No Valid Business Expectancy..........................................................................14

       b. Justification Exists..............................................................................................15

V. No Cause For Permanent Injunction............................................................................16

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)..............................................4, 5, 12,

*Briner Electric Company v. Sachs Electric Company*, 680 S.W. 2d 737, 741 (Mo. App. E.D. 1984)..............................................................................................................15

*Church Mutual Insurance Company v. Copenhaver*, 2010 W.L. 2105623.....................10

*Coleman v. Watt*, 40 F3d 255, 258 (Eighth Circuit 1994)....................................4

*Environmental Energy Partners, Inc., v. Siemens Building Technologies, Inc.*, 178 S.W. 3d 691, 703 (Mo. App. S.D. 2005)..............................................................15

*Fray v. City of Hurculaneum*, 44 F3d 667, 671 (Eighth Circuit 1995).................4

*Healthcare Service of The Ozarks, Inc., v. Copeland*, 198 S.W. 3d 604, 613 (Mo banc 2006)..........................................................................................10, 11, 12

*Service Vending Company v. Wal-Mart Stores, Inc.*, 93 S.W. 3d 749, 769 (Mo. App. S.D. 2002)..........................................................................................6, 10, 14

*State ex rel Coffin Group, LLC v. Sweeney*, 219 S.W. 3d 763, 769 (Mo. App S.D. 2005)..............................................................................................................11

*Stehno v. Sprint Specktrum L.P.*, 186 S.W. 3d 247, 250 (Mo banc 2006).............6, 14

*Western Blue Print Company, LLC v. Roberts*, 367 S.W. 3d 7 (Mo banc 2012)............13

*Whelan Security Company v. Kennebrew*, 379 S.W. 3d 835 (Mo banc 2012).....6, 7, 8, 9

COMES NOW Spracklen Insurance Services, Inc., by and through counsel, and for its suggestions in support of its motion to dismiss plaintiff's complaint, states as follows:

Plaintiff's complaint attempts to assert four counts against Spracklen Insurance: 1) misappropriation of trade secrets; 2) tortious interference with contract as to the contract between Sands and the plaintiff; 3) tortious interference with business expectancy; and 4) permanent injunction. The plaintiff alleges that it hired Co-defendant Robert Sands as a regional sales representative in 2002 and that Sands' employment with the plaintiff ended November 9, 2012. The plaintiff also alleges that while employed with the plaintiff, Sands signed a contract which contained a non-compete provision. Additionally, the plaintiff attempts to allege that it is in possession of certain trade secrets and that, while employed with the plaintiff, Sands was exposed to those trade secrets. The plaintiff claims that Sands has been employed by Spracklen Insurance as a sales representative since approximately July of 2013.

### I. Standard of Review

In considering a motion to dismiss, the trial court must assume that all of the facts alleged in the complaint are true and construe the complaint in the light most favorable to the plaintiff. ***Coleman v. Watt, 40 F3d 255, 258 (Eighth Circuit 1994)***. Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action for failure to state a claim upon which relief can be granted. Dismissal is appropriate if it is clear that no relief can be granted under any set of facts that can be proved consistent with the allegations. ***Fray v. City of Hurculaneum, 44 F3d 667, 671 (Eighth Circuit 1995)***. The Supreme Court has recently addressed what be contained in a properly pleaded complaint. In ***Ashcroft v.***

*Iqbal, 129 S.Ct. 1937 (2009)*, the court stated:

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief ... the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Id at 1949* (internal citations and quotations omitted).

In order to survive a motion to dismiss, a complaint has to contain sufficient factual matter to state a claim of relief that is plausible on its face. *Id.* In order to obtain facial plausibility, the plaintiff has to plead factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the complaint fails to contain or state a plausible claim for relief then it may not survive a motion to dismiss. *Id at 1950.* If the complaint does not contain facts that allow the court to infer "more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Id at 1950* (internal quotations removed). If pleadings that are contained in the complaint represent nothing more than mere conclusory statements, then they are not entitled to an assumption of truth when challenged by a motion to dismiss. *Id.* Legal conclusions contained in pleadings must be supported by factual allegations. *Id.*

## II. No Tortious Interference With Contract

In its "fifth cause of action" contained within its complaint, Church Mutual attempts to allege that Spracklen Insurance has tortiously interfered with plaintiff's contract with

Sands.

The elements for a claim for tortious interference that the plaintiff must plead are that (1) plaintiff had a valid business expectancy; (2) Spracklen Insurance was aware and had knowledge of that relationship; (3) there was a breach induced or caused by Spracklen Insurance's intentional interference; (4) absence of any justification; and (5) damages. ***Stehno v. Sprint Specktrum L.P., 186 S.W. 3d 247, 250 (Mo banc 2006)***. "In order to have a claim with interference with a valid business expectancy, it is necessary to determine if the expectancy claim was reasonable and valid under the circumstances alleged. If it is not, there is nothing for defendants to have interfered with." ***Service Vending Company v. Wal-Mart Stores, Inc., 93 S.W. 3d 749, 769 (Mo. App. S.D. 2002).***

In this case, plaintiff does not have a reasonable and valid business expectancy as its non-compete agreement with Sands is overbroad and unreasonable under Missouri law. In paragraph 23 of its complaint, the plaintiff has set forth the alleged non-compete language of the contract. The applicable portion of the non-compete states as follows:

> **Employee agrees that he/she will not sell or solicit property and casualty insurance to churches and other religious institutional properties for a period of three years within the geographical territory being serviced by the Employee at the time of termination of this agreement or in any territory service by him/her within three years prior to his/her termination.**

Plaintiff's complaint paragraph 23.

The Missouri Supreme Court recently addressed non-compete clauses in ***Whelan Security Company v. Kennebrew, 379 S.W. 3d 835 (Mo banc 2012)***. In *Kennebrew*, the Supreme Court stated the following:

-6-

Case 6:14-cv-03119-DGK   Document 21   Filed 04/10/14   Page 6 of 17

> The law of non-compete agreements in Missouri seeks to balance the competing concerns between an employer and employee in the work force. On one hand, employers have a legitimate interest in engaging a highly trained work force without the risk of losing customers and business secrets after an employee leaves his or her employment. On the other hand, employees have a legitimate interest in having mobility between employers to provide for their families and advance their careers. Furthermore, although the law favors the ability of parties to contract freely, contracts in restraint of trade are unlawful.

*Kennebrew, 379 S.W. 3d at 841*. (Internal citations omitted).

A non-compete agreement is generally considered enforceable if it is demonstratively reasonable. *Id.* In order for a non-compete to be considered reasonable, it must be no more restrictive than is necessary to protect the legitimate interest of the employer. *Id*. As such, it has to be narrowly tailored temporally and geographically and must seek to protect legitimate employer interest beyond mere competition by a former employee. *Id at 841-842.* As such, it is only enforceable to the extent that the non-compete attempts to protect the employer's trade secrets or customer contacts. *Id at 842.* It is the employer's burden to demonstrate and prove that the non-compete protects the employer's legitimate interest in either trade secrets or customer contacts and that the agreement is reasonable as to time and geographic space. *Id.*

In Missouri, an employer does have a legitimate interest in its customer contacts to the extent that the employer attempts to protect against any influence and employee acquires over those customers through personal contact. *Id.* "Furthermore, an employee's ability to influence customers depends on the quality, frequency and duration of an employee's exposure to any employer's customer's [, which is] crucial in determining the covenants reasonableness." *Id.*

-7-

As previously discussed, plaintiff has failed to specifically designate and delineate its alleged trade secrets and as such cannot demonstrate the legitimate interest in trade secrets that may be protected by any such non-compete agreement. Plaintiff has also failed to allege any facts regarding Sands' exposure to plaintiff's customers. Moreover, the non-compete agreement is overbroad as to its solicitation of customers.

The non-compete agreement does not limit itself to prohibiting Sands only from soliciting Church Mutual insureds (its customer contacts). Instead, the non-compete agreement attempts to prohibit Sands from soliciting or selling any property and casualty insurance to <u>any church or religious institution</u> that is within the geographical territory he served at the time of his termination or any territory he served within three years before his termination. As such, Sands is prohibited from soliciting or selling to not only any customer of the plaintiff's within one of the designated regions but also with any potential customer, whether or not that customer has ever been a client of the plaintiff. For this reason, the non-compete is overbroad and non-enforceable.

In *Kennebrew*, the Missouri Supreme Court held that a non-compete provision restricting an employee only from soliciting the employee's customers, whether or not the employee had any personal contact with those customers, was unreasonably overbroad. ***Id at 843.*** Additionally, the non-compete in Kennebrew also prohibited the former employees from soliciting the employer's prospective clients that the employer had sought during the last twelve months of the former employee's employment. ***Id.*** The court noted that preventing the former employee from soliciting any of the employer's prospective customers would not protect the employer from the influence an employee acquires over the employer's customers through personal contact "but instead would protect it from

-8-

Case 6:14-cv-03119-DGK   Document 21   Filed 04/10/14   Page 8 of 17

competition altogether[.]" *Id at 843-844.* As such, that portion of the non-compete agreement was also overbroad and unreasonable. *Id at 844.*

In this case, Church Mutual did not even attempt to limit its non-compete in the same manner as the employer in *Kennebrew*. Instead, Church Mutual has attempted to prevent Sands from soliciting any churches or other religious institutional properties for a period of three years. Church Mutual is not trying to protect its legitimate interest in customer contacts, rather Church Mutual is trying to prevent all competition, which it cannot do.

Additionally, the non-compete clause does not define "religious institutions." That phrase could be defined so broadly so as to include hospitals, nursing homes, schools, universities and many other not for profit businesses and corporations. Again, the non-compete applies not to any current customers of the plaintiff, but to any such churches or religious institutions located within the geographic area. Under the terms of the non-compete, it does not matter whether Church Mutual even solicits or has customers that are schools, nursing homes, hospitals, universities, or not for profits other than churches.

The non-compete is also overly restrictive and unreasonable in regards to its time restriction. The non-compete attempts to prohibit Sands from soliciting any churches or religious institutions for three years after the date of his termination. The non-compete's terms provide that it applies not only to the geographic territory that Sands was working in at the time of his termination, but also as to any geographical territory he was assigned within three years of the date of his termination. As such, the non-compete potentially applies to a customer contact that Sands may have had in a different territory three years before the date of his termination. The plaintiff alleges that Sands was terminated on or

-9-

Case 6:14-cv-03119-DGK   Document 21   Filed 04/10/14   Page 9 of 17

about November 9, 2012. If, for example, Sands served a territory in Kansas in November of 2009, before being transferred to the Missouri territory, then potentially Sands would be prohibited from having any kind of contact with any customer in Kansas territory until 2015, which would actually be six years after Sands had any contact with any potential customer in the Kansas territory.

Non-compete agreements are considered contracts in restraint of trade. **Healthcare Service of The Ozarks, Inc., v. Copeland, 198 S.W. 3d 604, 613 (Mo banc 2006)**. Non-compete agreements must be strictly construed. *Id.* Given that the non-compete is not restricted to only those entities with whom Sands had customer contacts, a three year time limitation is also overbroad and unreasonable.

Although it is not binding upon this court, the District Court of Arkansas recently evaluated and addressed this exact same non-compete provision while applying Arkansas law. In **Church Mutual Insurance Company v. Copenhaver, 2010 W.L. 2105623,** the District Court of Arkansas found this exact same non-compete provision to be overbroad and unreasonable and as such considered it unenforceable. A copy of the District Court's decision is attached hereto as Exhibit A.

Because the non-compete provision is overbroad and unreasonable, it constitutes an invalid restraint upon trade. As such, the plaintiff's expectancy claim is not reasonable and valid under these circumstances. In the lack of a valid and reasonable business expectancy, there can be no claim for tortious interference. **Service Vending Company, 93 S.W. 3d at 769.** Thus, plaintiff's claim for tortious interference with contract must be dismissed.

## III. Plaintiff Has Failed To Sufficiently Designate What Its Trade Secret Is

In paragraph 10 of its complaint, the plaintiff makes the following allegation:

> Church Mutual provides each sales representative with confidential, proprietary, and trade-secret information. This information includes but is not limited to customer lists, policy holder expiration data, claims information, ratings and estimating formulas, coverage information, pricing data, financial data, marketing data, prospect lists, production processes and merchandising systems, compositions and other writings, systems, techniques, computer programs, data, research projects, plans, processes, and methods of doing business.

Plaintiff also alleges that it provides each sales representative with access to a database that contains trade secrets, specifically detailed information regarding the insurance purchased by Church Mutual's existing and former insureds in the territory serviced by the sales representative, including the contract as well as coverage, premium, claims and expiration information. (Plaintiff's complaint paragraph 11). The database also contains trade secret information related to perspective insureds.

As the above demonstrates, plaintiff's allege "trade secret" is so broadly and amorphously defined that it is impossible for Spracklen Insurance to determine what exactly plaintiff is claiming was misappropriated. Under Missouri law, in order to properly plead a claim for a trade secret violation, the plaintiff's evidence "of purported trade secrets must be more than general assertions, but must be sufficiently specific to allow a determination by the court." ***Healthcare Services of The Ozarks, Inc., v. Copeland, 198 S.W. 3d 604, 611 (Mo banc 2006).*** This is because, under Missouri law, whether or not certain information constitutes a trade secret is a question of law to be determined based on applicable facts. ***State ex rel Coffin Group, LLC v. Sweeney, 219 S.W. 3d***

-11-

*763, 769 (Mo. App S.D. 2005).* "The burden of proof rests upon an employer to substantiate its asserted interest in its trade secrets." *Copeland, 198 S.W. 3d at 611.*

After failing to properly set forth exactly what the trade secret is, the plaintiff then alleges that "it is <u>believed</u> that Sands uses Church Mutual's trade secret information and shares that information with Spracklen [.]" (Complaint paragraph 34). No allegations are offered to support the "belief" that Sands used any trade secret information or that any such information was shared with Spracklen Insurance. If the alleged facts do not allow the court to infer "more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Iqbal, 129 S. Ct. at 1950.*

Of course, before Spracklen Insurance can respond to these allegations, Spracklen must first be made aware of what exactly the claimed trade secret is and what exactly the plaintiff claims that Sands misappropriated and shared with Spracklen Insurance. It is the plaintiff's obligation and burden to plead sufficient facts for the court to be able to determine whether or not the alleged trade secret is an actual trade secret under Missouri law.

Because plaintiff has failed to adequately establish exactly what plaintiff is claiming as a trade secret and what the plaintiff alleges was misappropriated, this court should dismiss Count III of the plaintiff's complaint.

The need for plaintiff to specifically designate what exactly its claim trade secret is and what exactly was allegedly misappropriated is especially important in light of Missouri law surrounding customer contacts. Missouri law clearly establishes that customer contacts do not constitute trade secrets. *Western Blue Print Company, LLC v. Roberts,*

*367 S.W. 3d 7 (Mo banc 2012)*. In *Western Blue* the Missouri Supreme Court, in discussing customer contacts, stated the following:

> In the sales industry the goodwill of a customer frequently attaches to the employer's sales representative personally; the employer's product becomes associated in the customer's mind with that representative. [Walter E. Zemitzsch, Inc. v. Harrison, 712 S.W. 2d 418, 421-22 (Mo. App E.D. 1986)] While these "customer contacts" are protectable, they are not protectable under a theory of confidential relationship or trade secret . **Zemitzsch, 712 S.W. 2d at 422.** *Zemitzsch* acknowledged, "because sales personnel may 'exert a special influence over that customer and entice that customer's business away from the employer,' the proper means of protection is a non-competition agreement." Id. (Quoting **Cont'l Research Corporation v. Scholz, 595 S.W. 2d 396, 401 (Mo. App E.D. 1980)**. *Zemitzsh* held an employee shall not be held liable for the company's failure to take precautions to protect this information if it deems it confidential. *Id.* Similarly, [the defendant] is not liable for [the plaintiff's] failure to protect its customer contacts[.]

**Western Blue Print, 367 S.W. 3d at 18.**

As such, to the extent that Church Mutual is attempting to claim that the customer contacts developed between Sands and Church Mutual insureds, constitute any trade secrets, any such claim must fail. If Sands did in fact solicit any individuals or churches with which he had any customer contacts with, then he may be liable for breach of his non-compete contract, but Church Mutual cannot claim those customer contacts as trade secrets.

The plaintiff has only made general assertions regarding its alleged trade secret and those general assertions are not sufficiently specific to allow a determination by this court as to whether or not they constitute a trade secret. As such, plaintiff's misappropriation of trade secret claim against Spracklen Insurance should be dismissed.

## IV. No Tortious Interference With Business Expectancy

In plaintiff's "seventh cause of action", plaintiff has attempted to assert a claim for tortious interference with business expectancy against Spracklen Insurance. Plaintiff alleges that Spracklen Insurance has interfered with the business expectancies between Church Mutual and churches and other religious institutional properties in Missouri. (Plaintiff's complaint paragraph 88).

In order for the plaintiff to have adequately set forth a claim for tortious interference, the plaintiff must have pleaded the following facts: (1) a valid business expectancy; (2) Spracklen Insurance's knowledge of that relationship; (3) a breach induced or caused by Spracklen Insurance's intentional interference; (4) Absence of justification; and (5) damages. ***Stehno v. Sprint Spectrum, L.P., 186 S.W. 3d 247. 250 (Mo banc 2006).***

### a. No Valid Business Expectancy.

As previously stated, if Church Mutual cannot establish that it had a valid business expectancy, then there is nothing for Spracklen Insurance to have interfered with. ***Service Vending Company, 93 S.W. 3d at 769.*** Plaintiff appears to attempt to justify the validity of its business expectancy based upon the purported non-compete. However, as previously demonstrated, that non-compete is overbroad and constitutes an unreasonable restraint on trade and as such is unenforceable. As the Missouri Supreme Court has stated, a "business expectancy that is contrary to the terms of a contract on which the expectancy depends is unreasonable." ***Stehno, 186 S.W. 3d at 251.***

-14-

### b. Justification Exists

Even if the court believes that the plaintiff had a valid business expectancy, Spracklen Insurance is justified in interfering with any such expectancy.

Under Missouri law, Spracklen Insurance is justified in interfering with Church Mutual's business affairs so long as any action taken by Spracklen was not legally improper. ***Environmental Energy Partners, Inc., v. Siemens Building Technologies, Inc., 178 S.W. 3d 691, 703 (Mo. App. S.D. 2005).*** "Actions are improper if they are independently wrongful notwithstanding injury caused by the interference." *Id.* Competition constitutes a valid justification. ***Briner Electric Company v. Sachs Electric Company, 680 S.W. 2d 737, 741 (Mo. App. E.D. 1984).***

Plaintiff acknowledges that Spracklen Insurance is a competitor for the sale of insurance policies to churches and religious institutions in Missouri. As such, mere competition by Spracklen Insurance constitutes justification and will not support claim for tortious interference. Instead, the plaintiff must demonstrate that actions taken by Spracklen Insurance were legally improper such that they were independently wrongful.

As has been stated herein, to the extent that Church Mutual is attempting to rely on the non-compete provision between it and Sands, that non-compete is an overbroad, unenforceable, unreasonable restraint on trade. As such, plaintiff cannot rely on the non-compete between it and Sands.

To the extent that plaintiff attempts to rely upon its claim of alleged misappropriation of trade secrets, plaintiff's claim for misappropriation fails for the

reasons previously stated herein. Moreover, to the extent that the tortious interference claim is based solely upon an alleged misappropriation of trade secrets, it is subsumed by the Missouri Uniform Trade Secrets Act and specifically barred by Section 417.463 RSMo. That section provides as follows:

> 1. Except as provided in subsection 2 of this section, sections 417.450 to 417.467 displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.
> 2. Sections 417.450 to 417.467 shall not effect:
> (1) contractual remedies, whether or not based upon misappropriation of a trade secret; or
> (2) other civil remedies that are not based upon misappropriation of a trade secret;
> (3) criminal remedies, whether or not based upon misappropriation of a trade secret; or
> (4) the discovery of facts, opinions, information, documents, things, and other matters discoverable in litigation, except in litigation which alleges misappropriation of trade secrets as a cause of action.

Plaintiff's tortious interference is not a claim based upon contractual remedy. To the extent that the tortious interference relies solely upon the misappropriation of a trade secret, it is a civil remedy that is based upon misappropriation of a trade secret. No criminal remedies are at issue. As such, to the extent that the plaintiff's tortious interference with business expectancies claim relies upon the alleged misappropriation of trade secrets, it is barred by Section 417.463.

## V. No Cause For Permanent Injunction

Plaintiff's claim for permanent injunction relies solely upon its previously stated causes of action against Spracklen Insurance. As those causes of action must be dismissed, there is no basis for a permanent injunction and plaintiff's "ninth cause of action" against Spracklen which requests a permanent injunction should be dismissed as well.

TAYLOR, STAFFORD, CLITHERO,
FITZGERALD & HARRIS, LLP

By: _____
Lance A. Roskens
Mo. Bar No. 59408
lroskens@taylorstafford.com
3315 E. Ridgeview, Suite 1000
Springfield, MO 65804
Telephone: (417) 887-2020
Facsimile: (417) 887-8431
**COUNSEL FOR DEFENDANT SPRACKLEN INSURANCE SERVICES, INC.**

## CERTIFICATE OF SERVICE

I, Lance A. Roskens, attorney for plaintiff in the above-entitled cause, hereby certify that on the ___10th___ day of April, 2014, the foregoing document was filed via the court's electronic filing system and was thereby electronically sent to Stephen Snead, Wallace Saunders, 901 St. Louis Street, Suite 702, Springfield, MO, 65806 and Mary M.L. O'Brien and John Radmer, Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4400, Minneapolis, MN, 55402 and to Ray Lampert, Lampert Law, LLC, 2847 S. Ingram Mill, Suite A-100, Springfield, MO, 65804.

_____
Lance A. Roskens