# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 14-CV-3119-S-DGK |
| ROBERT J. SANDS, et al., | ) ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

This case concerns a non-compete agreement. Plaintiff Church Mutual Insurance Company ("Church Mutual") formerly employed Defendant Robert J. Sands ("Sands"). Sands has left Church Mutual's employ and now works for Defendant Spracklen Insurance Services, Inc. ("Spracklen").

Pending before the Court are two motions: Spracklen's Motion to Dismiss (Doc. 20) and Sands's Motion to Dismiss (Doc. 22). For the reasons articulated below, the Court GRANTS IN PART and DENIES IN PART these motions.

### Standard

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). A complaint must meet two conditions to survive a Rule 12(b)(6) motion. First, it must "contain sufficient factual matter, accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, the complaint must state a claim for relief that is plausible. *Iqbal*, 556 U.S. at 678. A claim is plausible when "the court may draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014). Further, the court generally must ignore any materials outside the pleadings. *Id.*

**Background**

Construing the Complaint liberally and drawing all reasonable inferences in Church Mutual's favor, the Court finds the facts to be as follows for purposes of resolving the pending motion to dismiss:

Church Mutual specializes in selling insurance to churches and other religious institutions. To remain competitive, Church Mutual has developed extensive proprietary information including territory-specific customer lists, premium data, policyholder expiration data, coverage information, claim history, pricing data, financial data, marketing data, prospect lists, and claims information. Church Mutual maintains this information with regard to both current clients and non-Church Mutual insureds whom it is targeting. Church Mutual protects its information from external disclosure because a competitor in possession of this knowledge would save time and money in conducting prospect research, know when to solicit current and former policyholders, and know how to undercut Church Mutual's premiums.

Church Mutual protects this information in a variety of ways. It does not allow individuals outside the company to access the information. It electronically encrypts and password-protects this data, which is stored in a separate, secure facility. Church Mutual

monitors electronic access of the data and restricts which of its own employees may see the data. Finally, Church Mutual prevents its sales representatives from disclosing trade secrets after they leave the company by requiring them to sign a so-called non-compete agreement. Under this agreement, the employee promises not to sell insurance to religious institutions in his sales territory for three years after termination. Church Mutual uses a three-year term for its non-compete agreements because it takes about three years for its sales representative to service all of his accounts and because its confidential information fades in relevancy after about three years.

Sands began working for Church Mutual as a sales representative in July 2002. When he started at Church Mutual, Sands signed a contract stating in part:

> Employee agrees that he/she will not sell or solicit property and casualty insurance to churches and other religious institutional properties for a period of three years within the geographical territory being serviced by the Employee at the time of termination of this agreement or in any territory serviced by him/her within three years prior to his/her termination. Employee acknowledges that a three year prohibition against solicitation as above set forth is reasonable. In addition, Employee hereby agrees that in the event of any breach, or threatened breach of this agreement, Company shall have the right to full injunctive relief and Employee hereby consents to the entry of an appropriate court order granting such injunctive relief.

While at Church Mutual, Sands served Church Mutual's Sales Territory 52: Barry, Christian, Douglas, Greene, Jasper, Lawrence, McDonald, Newton, Ozark, Stone, Taney, Webster, and Wright Counties in southern Missouri.[1] Sands ceased working for Church Mutual on November 9, 2012.

Church Mutual later discovered that Sands now works for Spracklen, a competing insurance provider. In October 2013, Seminole Baptist Temple, a Church Mutual client, canceled its insurance policy midway through the policy period. Seminole Baptist Temple told Church Mutual that it was switching to Spracklen and that Sands is its agent. Church Mutual

---

[1] All thirteen of these counties lie within the Western District of Missouri. *See* 28 U.S.C. § 105(b)(2), (5).

3

believes that Sands and Spracklen have solicited at least four other Church Mutual customers in Sales Territory 52. In January 2014, Sands again solicited an unidentified Church Mutual client.

Church Mutual filed a nine-count Complaint (Doc. 1) in March 2014. Spracklen and Sands each filed a motion to dismiss (Docs. 20, 22), collectively challenging all counts in the Complaint.

## Discussion

The Complaint charges nine counts, five against Sands and four against Spracklen, all based on Missouri state law. Defendants collectively dispute whether each count states a claim for relief.

### I. Breach of contract against Sands.

Count I alleges a breach of contract, predicated on Sands allegedly violating his non-compete agreement. A breach of contract claim has four elements: "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012). Sands disputes only that Church Mutual can prove the first element: he argues that his non-compete agreement is not valid.

Missouri law recognizes a non-compete agreement as valid if it: (a) protects the employer's trade secrets or customer contacts; and (b) is reasonable in scope. *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 613 (Mo. 2006). On the factual allegations of the Complaint, the non-compete agreement satisfies both conditions.

First, Church Mutual sufficiently pleads that the non-compete agreement protects its trade secrets. A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766,

4

776 (Mo. Ct. App. 2009) (internal quotation marks omitted). To determine whether a piece of information is a trade secret, a court should consider:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Healthcare Servs. of the Ozarks*, 198 S.W.3d at 610–11.

The Complaint demonstrates that the non-compete agreement protects its trade secrets. Church Mutual maintains confidential business information including rating and estimating formulas, computer programs, research projects, customer and prospect lists, policyholder expiration data, coverage and claims information, and other information related to past, current, and prospective clients. Church Mutual has compiled this data over many years, and it is the only insurer with this information. It protects this information to the exclusion of others, including its own employees who do not need access to the data, by securing and encrypting the electronic data, monitoring network traffic, and maintaining the data in a separate, secure facility. Church Mutual also emphasizes the confidentiality of this information by requiring its employees, including Sands, to sign non-compete agreements. The Court thus finds that Sands's non-compete agreement protects cognizable trade secrets.

Second, the Complaint pleads that the non-compete agreement is reasonable in scope. A non-compete agreement is reasonable if it is "no more restrictive than is necessary to protect the legitimate interests of the employer." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 842 (Mo. 2012). In determining reasonableness, a court must examine all of the agreement's terms, including its temporal and spatial dimensions. *Id.*

5

Here, the non-compete agreement was reasonable in scope. The three-year limitation is reasonable because a Church Mutual representative plausibly needs about three years to service all accounts in his territory and because the policy and premium information are relevant for three years. The non-compete agreement stands to prevent ex-employees from using these tools against Church Mutual until a time when the trade secrets have likely faded in relevancy and new Church Mutual representatives have had an opportunity to become knowledgeable enough to countervail the ex-employees' influence with the clients. *See House of Tools & Eng'g, Inc. v. Price*, 504 S.W.2d 157, 159 (Mo. Ct. App. 1973) (finding acceptable a non-compete agreement lasting three years where the employee salesperson was given extensive information on each of the employer's customers).

The non-compete agreement precludes Sands from selling insurance to religious institutions only in his former sales territory. The Court finds that the agreement's geographic restriction is no more restrictive than necessary. Sands's former Church Mutual clients were only in Sales Territory 52, the same region covered by the trade secrets to which Sands had access. By keeping Sands from selling insurance to religious institutions in these thirteen counties for three years, the agreement stands to protect Sands from using confidential information in the place where it would damage Church Mutual the most. *See Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 617 (Mo. Ct. App. 1988) (finding that a salesperson's former sales territory constitutes an acceptable geographic restriction); *Whelan*, 379 S.W.3d at 844 ("Protection of the employer, not punishment of the employee, is the essence of [non-compete] law.").

Finally, although the non-compete agreement prevents Sands from soliciting or selling insurance to *any* religious institution in Sales Territory 52, and not just Church Mutual clients,

6

the information Church Mutual allegedly provided to Sands is sufficiently comprehensive, valuable, and exclusive that Sands's breach of the agreement stands to unfairly disadvantage Church Mutual with clients, current or prospective. Thus, the non-compete agreement is reasonable in scope.[2]

For these reasons, the Court finds that Church Mutual has pleaded a valid claim for breach of contract against Sands.

## II. The Complaint states a claim for misappropriation of trade secrets against Sands and Spracklen.

Count II and Count III charges that Sands and Spracklen, respectively, misappropriated Church Mutual's trade secrets. Misappropriation of trade secrets occurs when: "(1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief." *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014) (construing the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450–.467). Defendants meaningfully challenge only the first element of this tort. Specifically, they argue that the Church Mutual's purported trade secrets are too vaguely and indeterminately pleaded.

Under the Missouri Uniform Trade Secrets Act, a "trade secret" is information such as data, a formula, pattern, or compilation, that derives independent economic value because it is neither widely known or readily ascertainable by people who would wish to discover it. Mo.

---

[2] The parties cite cases from outside this district to show that other courts have previously held Church Mutual's standard non-compete agreements to be reasonable or unreasonable. *See, e.g.*, *Church Mut. Ins. Co. v. Copenhaver*, No. 09-CV-487-JMM, 2010 WL 2105623 (E.D. Ark. May 24, 2010) (unreasonable); *Stewart v. Church Mut. Ins. Co.*, No. 85-2488 (7th Cir. Oct. 1, 1986) (unpublished) (reasonable); *Church Mut. Ins. Co. v. Bogen*, No. 788804 (Minn. Dist. Ct. Aug. 9, 1983) (unpublished) (reasonable). However, none of these decisions involves factual allegations identical to those made by this Complaint, and none arises out of Missouri state law as here.

Rev. Stat. § 417.453(4)(a).[3] Examples include detailed product books and price lists, especially those compiled over a long period of time. *Lyn-Flex W., Inc. v. Dieckhaus*, 24 S.W.3d 693, 698–99 (Mo. Ct. App. 1999). For information to qualify as a trade secret, its owner must also undertake reasonable efforts to maintain its secrecy. Mo. Rev. Stat. § 417.453(4)(b). Reasonable efforts to maintain secrecy exist where the information's owner emphasized the information's confidentiality and limited access to the information by locking it in an office at night. *Lyn-Flex W.*, 24 S.W.3d at 699. The existence of a non-compete agreement may also be a reasonable effort to maintain secrecy. *Id.*

Church Mutual's confidential business information qualifies as a trade secret under the Missouri Uniform Trade Secrets Act for largely the same reasons it does under the breach of contract claim.[4] Church Mutual maintained data, formulas, patterns, and compilations that are known only to limited employees within the company that require access to perform their job duties. This information has independent economic value because competitors in possession of the information could undercut Church Mutual's client relationships without spending the years' worth of work that Church Mutual did to compile the information. Church Mutual protects this information to the exclusion of others, including employees who do not need access to the data to do their jobs, by encrypting the electronic data and storing it in a separate, secure facility. It requires employees, including Sands, to sign non-compete agreements promising not to disclose

---

[3] This definition differs slightly from the one used by the Supreme Court of Missouri in deciding breach of non-compete agreement claims. *See Healthcare Servs. of the Ozarks*, 198 S.W.3d at 610–11 (using only the multifactor test and making no mention of the Missouri Uniform Trade Secrets Act).

[4] Spracklen's suggestions in support focus on how Church Mutual alleges that it developed customer lists, which cannot constitute trade secrets. While the Supreme Court of Missouri has not squarely addressed when customer lists are trade secrets, *Cent. Trust & Inv. Co.*, 422 S.W.3d at 321 n.9, because the Complaint pleads several other types of trade secrets (*see* Doc. 1, at ¶¶ 10–11), the Court does not need to address this issue to resolve the motion to dismiss.

confidential information. For these reasons, the Court finds that the Complaint provides enough factual allegations to show that trade secrets exist. Counts II and III state a claim.

> III. **The Complaint fails to state a claim for tortious interference in a contract against Sands.**

Count IV of the Complaint charges tortious interference with contract against Sands. A claim for tortious interference with contract requires a plaintiff to prove: (1) a valid contract; "(2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014). Sands challenges the Complaint on the third prong of this tort. He argues that the Complaint does not allege that any customer has breached their insurance contract or detail what actions Sands took to interfere with their insurance contracts.

A defendant induces a breach of contract if two conditions are satisfied: first, the defendant "actively and affirmatively takes steps to induce the breach," and second, "the contract would have been performed absent interference from the defendant." *Howard v. Youngman*, 81 S.W.3d 101, 114 (Mo. Ct. App. 2002). In other words, the plaintiff must show "that had it not been for the defendant's acts, the contract would have been performed." *Tri-Cont'l Leasing Co. v. Neidhardt*, 540 S.W.2d 210, 216 (Mo. Ct. App. 1976).

Here, the Complaint fails to adequately plead that Sands took such affirmative steps. It alleges that Sands "intentionally interfered" with contracts between Church Mutual and certain of its insureds, and that at least one of those insureds, Seminole Baptist Temple, cancelled its insurance contract (Doc. 1, at ¶ 66). It further alleges that Sands did this by "soliciting property and casualty insurance to churches and other religious institutional properties" (*Id.*). However, the Complaint does not mention whether Seminole Baptist Temple's contract cancellation was a

9

breach of that contract. Insofar as the contract cancellation could be a breach, the Complaint does not mention whether Sands's actions—namely, selling insurance in contravention of his non-compete agreement—served to induce that breach. Finally, it does not plead what form Sands's intentional interference took and whether the other insureds actually breached their contracts because of Sands's interference. Thus, even viewing the Complaint in the light most favorable to Church Mutual as it must, the Court finds that Church Mutual's intentional interference of contract allegations against Sands offer only "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. For these reasons, the Complaint fails to state a claim for Count IV.

### IV. The Complaint states a claim for tortious interference with contract for Spracklen.

Count V of the Complaint charges tortious interference with contract against Spracklen. The Complaint alleges that Spracklen interfered with two sets of contracts: Church Mutual's employment contract with Sands, and Church Mutual's insurance contracts with various clients. Spracklen's motion addresses only Church Mutual's employment contract with Sands.

Although Spracklen analyzes Count V as a claim for tortious interference with *business expectancy*, it appears to attack the validity of the employment contract regardless. A valid contract is required to sustain a claim for tortious interference with contract. *See Rhodes Eng'g Co. v. Pub. Water Supply Dist. No. 1 of Holt Cnty.*, 128 S.W.3d 550, 565 (Mo. Ct. App. 2004). Because the Court earlier found that the non-compete agreement is valid, Count V states a claim.

### V. The complaint states a claim for tortious interference with a business expectancy for Sands.

Count VI of the Complaint charges tortious interference with a business expectancy against Sands. Specifically, Church Mutual alleges that Sands's defection to Spracklen has interfered with its business expectancies regarding religious institutions in Sales Territory 52.

The elements of a tortious interference with a business expectancy claim are: "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. 2006). Sands argues that Church Mutual has not pleaded the first element, the existence of a valid business expectancy.

A valid business expectancy is a "reasonable expectation of economic advantage or commercial relations." *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 565 (Mo. Ct. App. 1999). A business expectancy can arise through a regular course of prior dealings and through contracts. *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012); *Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp.*, 26 S.W.3d 300, 302 (Mo. Ct. App. 2000).

Church Mutual alleges business expectancies with churches and other religious institutional properties in Sales Territory 52. Although the Complaint speaks broadly of religious institutions in Sales Territory 52, it appears to limit its focus to current clients. For example, it states in the present tense that "Church Mutual profits from these business expectancies by writing policies of insurance to, and collecting premiums from, various [religious institutions in Sales Territory 52]" (Doc. 1, at ¶ 82). Further, the Complaint does not plead *non*-client religious institutions in Sales Territory 52 with any factual particularity, so the Court cannot assess the validity of Church Mutual's reasonable expectations of probable future business relationships. Even if it could, the Court doubts that prospective policyholders with whom Church Mutual has had no course of prior dealings would constitute valid business expectancies. *See, e.g.*, *Sloan*, 1 S.W.3d at 565 (holding that insurance policyholder prospects with whom an insurance agent had had no previous relationship were "legally 'up for grabs'"

and thus not the agent's business expectancies). Thus, the Court construes Count VI to refer only to current Church Mutual clients.

Church Mutual has contracts with all of the religious institutions it insures in Sales Territory 52. Not only are these current business relationships, but the Court finds it plausible that they are probable, future business relationships. Further, Church Mutual can reasonably expect to make money off these relationships in the future because policyholders plausibly can renew their contracts every few years. Church Mutual thus has a valid business expectancy regarding its insureds. *See, e.g.*, *Killian Constr. Co. v. Jack D. Ball & Assocs.*, 865 S.W.2d 889, 891–92 (Mo. Ct. App. 1993) (finding the lowest responsible bidder for a public project had a business expectancy in receiving the contract). For these reasons, the Complaint states a claim for Count VI.

### VI. The Complaint states a claim for tortious interference with a business expectancy for Spracklen.

Count VII is for tortious interference with a business expectancy against Spracklen for interfering with the same business expectancies. Spracklen argues that Count VII fails to state a claim on the fourth element: absence of justification for interfering with the expectancies.

An "absence of justification" is the absence of a legal right to take the actions about which the plaintiff complains. *21 W., Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 870 (Mo. Ct. App. 1995). There is no justification for independently wrongful acts, which include acts wrongful under the common law. *Id.* However, competitive conduct generally constitutes justifiable interference. *Gott v. First Midwest Bank of Dexter*, 963 S.W.3d 432, 438 (Mo. Ct. App. 1998).

Here, Spracklen interfered with Church Mutual's expectancies by using Sands to poach Church Mutual clients. Spracklen offers the justification of competitive conduct. However,

Spracklen interfered with Church Mutual's relationships by interfering with Sands's employment contract and persuading him to reveal Church Mutual's trade secrets. This independently wrongful act demonstrates a lack of justification. Therefore, the Complaint states a claim for Count VII.

Spracklen states that if the tortious interference is based solely on misappropriation of trade secrets, then it must be preempted. The Missouri Uniform Trade Secrets Act "displace[s] conflicting tort . . . laws of this state providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463(1). However, Section 417.463(1) does not displace tort laws that are merely *based upon* misappropriation of a trade secret. Thus, Section 417.463(1) does not preempt Count VII because Count VII is not entirely predicated on misappropriation of trade secrets. Rather, the Complaint specifically alleges that Spracklen interfered with business expectancies by causing Church Mutual clients to defect for Spracklen, plausibly by inducing Sands to breach his non-compete agreement.

### VII. The Complaint incorrectly styles its prayers for injunctive relief as separate counts.

Counts VIII and IX are for permanent injunctions against Sands and Spracklen, respectively. Injunctive relief is a remedy, not a separate cause of action. *E.g. Jackson Cnty., Mo. ex rel. Nixon v. MERSCORP, Inc.*, 915 F. Supp. 2d 1064, 1072–73 (W.D. Mo. 2013). Thus, the Court grants Defendants' motions as to these Counts. Of course, the Complaint's request for injunctive relief is preserved in substance, if not in form.

### Conclusion

The Court finds that the Complaint states a claim upon which relief can be granted with respect to all counts except Counts IV, VIII, and IX. Further, the Court limits Count VI in the

manner described above. Thus, the Court GRANTS IN PART and DENIES IN PART Spracklen's Motion to Dismiss (Doc. 20) and Sands's Motion to Dismiss (Doc. 22).

**IT IS SO ORDERED.**

Date:  July 9, 2014                                  /s/ Greg Kays
                                                                         GREG KAYS, CHIEF JUDGE
                                                                         UNITED STATES DISTRICT COURT