IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14-CV-3119-S-DGK |
| ROBERT J. SANDS, et al., | ) ) ) | |
| Defendants. | ) | |

## **ORDER PARTIALLY GRANTING MOTION FOR PRELIMINARY INJUNCTION**

This case involves a non-compete agreement. When Defendant Robert J. Sands ("Sands") worked as an insurance sales representative for Plaintiff Church Mutual Insurance Co. ("Church Mutual"), he signed a contract promising not to sell or solicit insurance to churches within his sales territory for three years after leaving the company. Sands quit Church Mutual to work for competitor Defendant Spracklen Insurance Services Co. ("Spracklen"), and Church Mutual is now suing him for several claims including breach of contract.

Now before the Court is Church Mutual's motion for a preliminary injunction (Doc. 7). For the reasons articulated below, the motion is GRANTED IN PART.

**Findings of Fact**

On Tuesday, July 29, 2014, the Court held an evidentiary hearing attended by all parties in Springfield, Missouri. Considering the evidence presented, the Court finds the following facts for purposes of deciding this motion:

1. Church Mutual and Spracklen both sell insurance to churches in Missouri.

2. Church Mutual employs regional sales representatives. Their job duties include:

a. Encouraging interest from potential customers in the representative's assigned sales territory by phone calls and emails;

b. Selling Church Mutual service products across a defined territory;

c. After concluding a sale, maintaining a business relationship with the customer; and

d. Beginning in 2012, visiting every account in the sales territory for the purpose of field underwriting, meaning the representative will assess the account and the facilities being insured.

3. Sands worked for Church Mutual as a sales representative from July 2002 until November 9, 2012.

4. As a condition of his employment, Sands signed a contract of employment.

5. Sands's contract of employment prohibited him from competing with Church Mututal for three years after leaving the company. Specifically, it prohibited him from selling or soliciting property and casualty insurance to churches and other religious institutional properties for three years within Church Mutual's so-called Sales Territory 06052.

6. Sales Territory 06052 comprises Barry, Christian, Douglas, Greene, Jasper, Lawrence, McDonald, Newton, Ozark, Stone, Taney, Webster, and Wright Counties in Missouri.

7. Sands's contract of employment also states that in the event he breaches the contract, Church Mutual has the right to full injunctive relief and Sands consents to the entry of an appropriate injunction against him.

8. Sands began working for Spracklen on February 1, 2013.

9. While working for Spracklen, Sands and Spracklen president Doug Spracklen visited First Baptist Church in Springfield, Missouri. While there, Sands and Doug Spracklen intended to meet with First Baptist Church's pastor for purely personal reasons. When the pastor was unavailable to meet, Doug Spracklen left behind his business cards for the pastor.

10. First Baptist Church is in Sales Territory 06052.

11. Sands does not currently perform work for Spracklen. He remains affiliated with Spracklen merely to keep his insurance license active.

12. Instead, Sands works full-time for an electronic-cigarette business he founded.

**Standard of Review**

Church Mutual moves for a preliminary injunction under Federal Rule of Civil Procedure 65(a). A preliminary injunction serves "to preserve the status quo until, upon final hearing, a court may grant full effective relief." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993). Accordingly, in a ruling on a motion for a preliminary injunction, a court may consider "evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In determining whether to grant preliminary injunction under Rule 65(a), the Court considers the so-called "*Dataphase* factors": (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *H&R Block Tax Servs. LLC v. Acevedo-Lopez*, 742 F.3d 1074, 1077 (8th Cir. 2014); *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). All *Dataphase* factors must be "balanced to determine whether they tilt toward or away" from

granting the injunction. *W. Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). An injunction is an extraordinary remedy and the movant—Church Mutual—bears the burden of establishing the need for such relief. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

**Discussion**

Church Mutual moves for a preliminary injunction to enjoin:

> (1) Sands from selling or soliciting casualty and property insurance to churches and other religious institutional properties in the thirteen-county territory he formerly serviced as a Church Mutual representative;
>
> (2) Sands from misappropriating Church Mutual's trade secrets or otherwise violating the nondisclosure provisions of his Contract of Employment; and
>
> (3) Spracklen from benefiting from or causing Sands to work in violation of his Contract of Employment, including but not limited to the noncompete and nondisclosure provisions of that Contract.

(Doc. 7, at 1).

Examining each factor in turn, the Court holds that the preliminary injunctive relief sought by Church Mutual is partially warranted.

**I.     The Court enjoins Sands from selling and soliciting in his former sales territory.**

The first proposed injunction is against Sands from selling or soliciting insurance to churches in his former Church Mutual sales territory, in accordance with his contract of employment.

**a.  Church Mutual will suffer irreparable harm if not granted this injunction.**

The party seeking an injunction must demonstrate a likelihood, not a mere possibility, that irreparable harm will occur without an injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The district court is empowered to issue an injunction "even without a showing of past wrongs," so long as "there exists some cognizable danger of recurrent

4

violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Thus, Church Mutual must first show that it faces irreparable harm if the Court does not enjoin Sands from working in Sales Territory 06052.

The "[l]oss of intangible assets such as reputation and goodwill" can result in irreparable harm. *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). A former employee's "possible disclosure or use of confidential information such as customer information" is relevant in determining irreparable harm. *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982). In particular, the mere violation of a valid non-compete agreement can support an inference of the existence of a threat of irreparable harm. *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984) ("If the noncompete agreements are valid, then we think an irreparable injury has been shown."). Other courts have found irreparable harm where the non-compete agreement states that its breach constitutes irreparable injury and notes the propriety of securing injunctive relief. *REG Seneca, LLC v. Harden*, 938 F. Supp. 2d 852, 860 (S.D. Iowa 2013) (collecting cases from district courts in the Eighth Circuit).

Here, absent an injunction, Church Mutual will likely suffer irreparable harm. Sands's non-compete agreement precludes him from soliciting and selling insurance to churches in his Church Mutual sales territory, and Sands likely engaged in solicitation in this territory. Sands and Doug Spracklen visited First Baptist Church in Sales Territory 06052 to visit a pastor with whom Sands had a very close relationship. Although the meeting never happened, Doug Spracklen left behind business cards for the pastor. By allowing his new boss to accompany him to a church with which he had a close relationship, and allowing his new boss to market Spracklen Insurance to First Baptist Church, Sands was complicit in Doug Spracklen's solicitation. Put another way, Sands helped encourage interest from potential customers in

5

Spracklen. By doing so, Sands arguably solicited the church, a breach of the non-compete agreement.

This breach per se supports an inference of irreparable harm, *see N.I.S. Corp.*, 724 F.2d at 710, especially since Sands consented in his non-compete agreement to an injunction against him in the event of breach. *See REG Seneca, LLC*, 938 F. Supp. 2d at 860. Sands's solicitation of Church Mutual clients precipitate an erosion of Church Mutual's client base and goodwill that is difficult to quantify. Although there is no evidence that the pastor responded to Doug Spracklen's overtures, leaving Sands free to trade on his Church Mutual relationships in this manner poses a "cognizable danger" of costing Church Mutual competitive advantage and goodwill in the future. *See W.T. Grant Co.*, 345 U.S. at 633.

The Court finds that Church Mutual will suffer irreparable harm if Sands is not held to his contract. The first *Dataphase* factor favors the issuance of an injunction.

### b. Church Mutual stands to suffer much greater harm than Sands.

The second *Dataphase* factor compares the harm Sands will suffer from a preliminary injunction with the potential harm Church Mutual will suffer absent a preliminary injunction.

The Court finds the proposed injunction will cause minimal harm to Sands. The injunction would restrict Sands from performing insurance work in a limited field in a limited area. It will not significantly affect Sands because is not currently selling insurance. Even if Sands wanted to start selling in Sales Territory 06052 again, he need only wait another fifteen months until his non-compete agreement expires in November 2015. Although Sands claims "a vested interest in being able to continue to work in his chosen field[, which] involves soliciting new business," Sands willingly entered a contract foregoing the right to work in that industry in that area for three years in exchange for his employment at Church Mutual (Doc. 28, at 2).

Church Mutual, on the other hand, will continue to suffer irreparable harm if an injunction does not issue. When Sands violates his non-compete agreement, he erodes Church Mutual's business goodwill and the possibility of future business and referrals from its lost customers.

The Court finds that the potential harm Church Mutual stands to suffer outweighs the potential harm to Sands. The second *Dataphase* factor favors the issuance of an injunction.

### c. Church Mutual has a fair chance of prevailing on the merits of its breach of contract claim.

The third *Dataphase* factor examines whether the party seeking injunctive relief "has demonstrated a 'fair chance of prevailing' in the ultimate litigation." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1054 (8th Cir. 2014). In making this determination, the district court is not required to engage in "a strict probabilistic determination of the chances of a movant's success." *Id.*

Church Mutual's first cause of action is breach of contract, predicated on Sands's alleged violation of his non-compete agreement. A breach of contract claim has four elements: "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012).

Sands disputes the first element, that his non-compete agreement is valid. For the reasons stated in the Court's Order Granting in Part and Denying Part Motions to Dismiss (Doc. 42, at 4–7), the Court finds Church Mutual has not only properly pleaded its breach of contract action, but also has a "fair chance of prevailing" on this claim in the ultimate litigation.

Sands also disputes the fourth element, the existence of damages. The Court finds that Church Mutual has a fair chance of showing that by actively facilitating Doug Spracklen's

solicitation, Sands himself solicited, and that this solicitation caused some scintilla of economic loss to Church Mutual.

For these reasons, Church Mutual has a fair chance of prevailing on the merits of its breach of contract claim, which favors granting an injunction.

### d. The public interest is served by this injunction.

The fourth prong of *Dataphase* examines the public interest. Upholding a valid agreement freely entered into by the parties, even a non-compete agreement such as this one, serves the public. *N.I.S. Corp.*, 724 F.2d at 710. Discouraging unfair competition also serves the public. This factor favors the issuance of an injunction.

Because all four *Dataphase* factors point toward enjoining Sands from selling or soliciting insurance to church institutions in his former Church Mutual sales territory, the Court issues this preliminary injunction.

## II. The Court declines to issue a general injunction stopping Sands from misappropriating Church Mutual's trade secrets or otherwise violating his employment contract.

The second form of preliminary injunctive relief Church Mutual seeks is to stop Sands from "misappropriating Church Mutual's trade secrets or otherwise violating the nondisclosure provisions of his Contract of Employment" (Doc. 8, at 19). Motions must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). Specificity in the request is necessary for the district court, which must "describe in reasonable detail . . . the act or acts restrained or required" in any order granting an injunction. Fed. R. Civ. P. 65(d)(1)(C).

Here, Church Mutual does not explain specifically how Sands is allegedly misappropriating Church Mutual's trade secrets. Nor does it propose how the Court could tailor an injunction to prevent Sands from "misappropriating Church Mutual's trade secrets or otherwise violating the nondisclosure provisions of his Contract." As best the Court can tell,

Church Mutual is seeking to stop Sands from working for Spracklen in any capacity. Because such an injunction would be overbroad, this part of Church Mutual's motion is denied.

### III. The Court declines to issue an injunction against Spracklen.

The third and final injunction sought by Church Mutual is to enjoin Spracklen from "benefiting from or causing Sands to work in violation of Contract of Employment, including but not limited to the noncompete and nondisclosure provisions of that Contract" (Doc. 7, at 1). Again, Church Mutual does not propose an injunction with any specificity. *See* Fed. R. Civ. P. 65(d)(1)(C). And although Church Mutual seeks to enjoin Spracklen here, its briefing does not address the first and second *Dataphase* factors as applied to Spracklen. Church Mutual bears the heavy burden of demonstrating the need for preliminary injunctive relief against Spracklen. Because Church Mutual does not address these essential factors, it has not carried its burden, and the Court must deny this part of Church Mutual's motion.

### IV. Church Mutual shall pay a security of $1.00.

Under Federal Rule of Civil Procedure 65(c) the Court must require security from the movant upon issuing an injunction. The amount of this bond lies in the district court's discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989). Courts may set a nominal bond when potential damages are limited and the enjoined party is able to continue working in his current position. *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 979–80 (N.D. Iowa 2006) (setting a preliminary injunction bond at $1.00 when the amount of damages was "extremely limited" because the former employee was allowed to continue working at his new employer in the same position after an injunction issued).

Here, Sands does not currently sell insurance at all for Spracklen. He works exclusively for his small business, which is not in the insurance field. Accordingly, the Court finds that a nominal bond of $1.00 is appropriate.

**Conclusion**

Church Mutual has carried its burden of establishing that a preliminary injunction is warranted in this case as to Sands. The Court GRANTS IN PART Church Mutual's motion for a preliminary injunction (Doc. 7). It is hereby

ORDERED that Defendant Robert J. Sands is enjoined from selling or soliciting casualty and property insurance to churches and other religious institutional properties in Barry, Christian, Douglas, Greene, Jasper, Lawrence, McDonald, Newton, Ozark, Stone, Taney, Webster, and Wright Counties in Missouri. This injunction shall dissolve on November 10, 2015 or at such other time as the Court directs. It is further

ORDERED that bond is hereby set in the amount of $1.00. Church Mutual shall remit this bond to the Clerk of the Court for the Western District of Missouri by August 15, 2014.

**IT IS SO ORDERED.**

Date: August 11, 2014  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT